### AUDI AG AND VOLKSWAGON OF AMERICA, INC., Plaintiffs,

v.

### Bob D'AMATO d/b/a Quatro Enthusiasts, Defendant.

#### No. 04–70665.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 19, 2004.

Gregory D. Phillips, Scott Ryther, Cody W. Zumwalt, Howard, Phillips & Andersen, Salt Lake City, Utah, Edward C. Cutlip, Jr., Kerr, Russell and Weber, PLC, Detroit, MI, for Plaintiffs Audi AG and Volkswagen of America.

Damian G. Wasserbauer, Canton, Connecticut, Adam B. Strauss, Dykema, Gossett PLLC, Bloomfield Hills, MI, for Defendant Bob D'Amato d/b/a Quattro Enthusiasts.

### OPINION AND ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS FOR PERSONAL JURISDICTION AND VENUE AND (2) GRANTING PLAINTIFFS' MOTION TO DISMISS "DEFAMATION" CLAIM

BORMAN, District Judge.

Presently before the Court is Defendant's Motion to Dismiss for

a. Lack of Personal Jurisdiction;

b. Improper Venue;

c. Or in the Alternative, Transfer Case for Improper Venue or For Convenience.

Also before the Court is Plaintiff's Motion to Dismiss Count VIII of Counterclaim for "Defamation." The Court heard oral argument on this matter on October 13, 2004.

## I. PERSONAL JURISDICTION CLAIM

### BACKGROUND:

In this action, Plaintiffs Audi AG and Volkswagon of America, Inc. ("Plaintiffs") brought suit against Bob D'Amato, an individual d/b/a as Quattro Enthusiasts ("Defendant") based on the alleged infringement of its trademark registrations. Specifically, the Complaint contains the following counts:

Count I—Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(a);

Count II—Trademark Infringement under 15 U.S.C. § 1114;

Count III—False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement under 15 U.S.C. § 1125(a);

Count IV—Cyberpiracy

Count V—Common Law Trademark Infringement.

Plaintiff seeks a preliminary and permanent injunction, compensatory damages, treble damages, attorneys's fees and costs.

On May 5, 2004, Defendant filed its answer and also asserted the following Counterclaims:

Count I—Declaratory Judgment of Non–Violation of Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(c);

Count II—Declaratory Judgment of Non–Violation of Trademark Infringement under 15 U.S.C. § 1114;

Count III—Declaratory Judgment of Non–Violation of False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement under 15 U.S.C. § 1125(a);

Count IV—Declaratory Judgment of Non–Violation of Cyberpiracy under 15 U.S.C. § 1125(a);

Count V—Declaratory Judgment of No Common Law or State Law Trademark Infringement;

Count VI—Declaratory Judgment of No Unfair Competition;

Count VII—Declaratory Judgment of No Unjust Enrichment;

Count VIII—Defamation;

Count IX—Quiet Title.

On August 10, 2004, Defendant filed the present motion to dismiss, arguing that this Court cannot exercise personal jurisdiction over them and that venue is improper. On September 1, 2004, Plaintiff filed its brief in opposition. On September 15, 2004, Defendants filed their Reply. The Court heard oral argument on this matter on October 13, 2004.

This controversy revolves around Bob D'Amato's website audisport.com. Defendant registered the domain name audisport.com. (Complaint, Exh. D). Plaintiffs claim that Defendant infringes and dilutes its world famous trademarks "AUDI", the "AUDI FOUR RING LOGO", and "QUATTRO" and the distinctive trade dress of Audi automobiles. (Complaint ¶¶ 1,9; see Exh. A for federal registrations). Defendant's website targets Audi enthusiasts. The website displays the four ring Audi logo. (See Complaint, Exh. B for website as it existed in December, 2003; see also Plaintiff's Brief, Exh. C for website as it existed in April 2003). The website offered to sell electronic services including email subscription and forwarding services, hosting services and advertising. (Complaint, Exh. B). Plaintiffs' claim the website falsely represented that it obtained a license from Plaintiffs by stating "While we are not an official part of Audi of America, we have a signed agreement allowing usage of Audi-owned tradenames." (Complaint ¶ 16; Exh. B). The website does include a disclaimer stating "this page is not associated with Audi AG or Audi USA in any way" (Complaint, Exh. B). Plaintiffs contend that the website has offered to sell various counterfeit goods. (Plaintiffs' Brief, pg. 5). Around April 2, 2003 the website offered to sell hats, shirts and cooler bags with the "audisport" logo. (Plaintiffs' Brief, Exh. C; see also Decl. of Cherry Exh. 1). For each good offered, a website visitor can view a product description, and click an "add to cart" button to purchase the product. (*Id.*). The visitor can then pay for the product via credit. (*Id.*).

The website also contains a link to Champion Audi, an Audi dealership in Pompano Beach, FL which states "need a new Audi" (Complaint, Exh. B). Defendant states that the website posts information about current Audi racing events in North America which is provided by Champion Audi. (Defendant's Motion to Dismiss, pg. 3, 8). Defendant claims he has never visited Michigan, and has no customers in Michigan. (Defendant's Motion pg. 11).

The Defendant moves to dismiss Plaintiff's complaint for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). Defendant claims his nominal, non-commercial, fair use activities regarding his website *audisport.com* fail to satisfy Michigan's long-arm statute and the Due Process clause. (Defendant's Motion pg. 2). Defendant further argues that Plaintiff's dealership encouraged him to develop his website in ways that Plaintiffs' now complain of in this lawsuit. (*Id.*)

Defendant argues that he has not transacted any business in Michigan. (Defendant's Brief pg. 3). Defendant states that no goods are offered on the website, and that a link to the website of Champion Audi, an Audi Dealership in Pompano Beach, FL is as close as it gets. (*Id.*). Defendant states that it has not contacted Plaintiffs or offered to sell the domain name to Audi. (*Id.*).

Defendant argues that Plaintiffs voluntarily cancelled its federal registration with its "AUDI SPORT" trademark. (*Id.* at 6). Defendant argues that Plaintiffs bring this action under its Trademarks "AUDI" the "four-rings" and "QUATTRO", and without a federal registration in "audisport" or "audi sport" as a matter of law, elements of dilution, distinctiveness or being a famous mark under Plaintiffs' Count I–III is not presumed. (*Id.* at 7). Thus, Defendant states "Plaintiffs may not be able to show injury to its primary

Trademarks AUDI, the four rings, and QUATTRO because of its own voluntary actions." (*Id.*).

Defendant also states that "some agreement" exists between he and Audi through the Champion Audi Dealership. (*Id.*). Defendant also states that the only goods sold through the website are that of the Champion Audi Dealership in Pompano Beach, Florida. (*Id.*). Defendant states that the use and display of Audi Trademarks was requested by Champion Audi and benefitted Plaintiffs rather than causing injury. (*Id.*). Defendant states he has never entered Michigan physically. (*Id.* at 11).

Defendant also argues in his Reply that because Plaintiffs use color graphics in the statement of issues and larger font, it is a violation of L.R. 5.1(a) because it is not plainly typewritten" and "except for pre-printed forms that are in general use, type size of all text and footnotes must be no smaller than 10 characters per inch (non-proportional) or 12 point (proportional)." (Defendant's Reply fn. 1).

Plaintiffs argue that Defendant's Motion to Dismiss for lack of personal jurisdiction must be denied for two reasons. First, because Defendant has an interactive website aimed and solicited at Michigan residents. (Defendant's Brief pg. 1). Second, Defendant has purposefully directed his infringement activities at Audi in Michigan, knowing that Audi would feel the injury here. (*Id.*). Plaintiffs state that Defendants use an Internet Domain name *www.audisport.com* that features Audi's registered "AUDI" trademark and Defendant displays Audi's registered design trademarks in Audi's stylized script and the Audi four ring logo. (*Id.*). Plaintiffs also claim that Defendant has advertised and sold a wide variety of infringing goods and services on his website. (*Id.*).

## ANALYSIS

### A. Standard

To avoid dismissal where there has been no evidentiary hearing, a plaintiff need only present a *prima facie* case for jurisdiction. *Niemi v. NHK Spring Co.*, 276 F.Supp.2d 717 (E.D.Mich.2003) (citing *Kerry Steel v. Paragon Industries*, 106 F.3d 147, 148 (6th Cir.1997)). A court must consider all affidavits and pleadings in a light most favorable to plaintiffs, and does not weigh the controverting assertions of the party seeking dismissal. *Id.* (citing *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998)).

At this stage, where the Court has not held an evidentiary hearing, "in the face of a properly supported motion for dismissal, the [plaintiffs] may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

▮▮▮ Plaintiff invokes this court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum's] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process. See *Bird v. Parsons*, 289 F.3d at 871 (6th Cir.2002) quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir.1992).

With personal jurisdiction, Michigan's Long Arm Statute applies. It states:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the in-dividual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.705.

▮▮▮ The Michigan Supreme Court has construed Michigan's Long–Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process. *The Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F.Supp.2d 806, 810 (E.D.Mich.2000) (citing *Sifers v. Horen*, 385 Mich. 195, 198–99, 188 N.W.2d 623 (1971)). The determination of whether jurisdiction attaches under M.C.L. § 600.711 and § 600.715 requires a two-step analysis:

First, whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth

Amendment of the United States Constitution. If not, then whether the rule of statutory construction supports such an exercise of jurisdiction over defendants. *Id.* (quoting *Walter v. M. Walter & Co., Inc.,* 179 Mich.App. 409, 446 N.W.2d 507 (1989)). Under Michigan's Long–Arm Statute, the state's jurisdiction extends to the limits imposed by the Due Process Clause, and thus, the two questions become one. *Id.* (citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir. 1992); *Green v. Wilson,* 455 Mich. 342, 565 N.W.2d 813 (1997)).

■ In order to comply with the Due Process Clause, the plaintiff must establish that significant minimum contacts exist sufficient to satisfy "traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Sixth Circuit has set forth three criteria that must be met before a court will exercise personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 150 (6th Cir. 1997)). The showing that the defendant purposefully availed himself of the privilege of transacting business or causing a consequence in the forum state is essential. *Id.* at 811 (citing *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1300 (6th Cir.1989)).

## B. Due Process

### a. Purposeful Availment

■ The United States Supreme Court has expressed that the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The key to this requirement is whether the defendant reached out beyond his state to create a continuous and systematic relationship with citizens of another state. *Id.* (citing *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174). " 'Purposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities. The defendant will have reason to foresee being 'haled before' a Michigan court." *Id.* (quoting *Jeffrey v. Rapid Am. Corp.,* 448 Mich. 178, 187, 529 N.W.2d 644 (1995)).

### (i) Interactivity of Defendant's Website

■■ In the internet context, the interactivity of the website determines whether personal jurisdiction is appropriate for an out of state defendant. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418–19 (9th Cir.1997). Courts have stated that there are three categories of interactivity for website. The first category is highly interactive which is the ability to download and enter into contracts. *CompuServe,*

*Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir.1996). This category is sufficient for a Court to exercise personal jurisdiction. *Id.* The second category is "a middle ground in which defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 564–65 (S.D.N.Y.2000). The last category is where the defendant makes information available on an otherwise passive website. *Id.* A "passive website is insufficient to establish purposeful availment for the purpose of due process." *McGill v. Gourmet Technologies, Inc.*, 300 F.Supp.2d 501 (E.D.Mich.2004).

Plaintiffs allege that Defendant's website offers to sell a variety of infringing goods and services on their website, including email subscription services, advertising space, and other items." (Plaintiffs' Brief pg. 4). Plaintiffs claim that Defendant's website is fully interactive, and visitors may complete business transactions by reviewing products description and ultimately purchase the products via credit online. (*Id.*; see also Complaint Exh. B). Plaintiffs allege that the website offered to sell a wide range of infringing services. (Plaintiffs' Brief pg. 5). At the time the Complaint was filed it included an email subscription service that provided customers with an email address comprised of the customer's name and "@audisport.com." Plaintiffs state that the goods and services varied over time but included infringing hats, shirts, and cooler bags. (*Id.* at Exh. C for a copy of the website as it appeared around April 2, 2003; see also Decl. of Jared Cherry). The website as it appeared in April 2003 also allowed visitors to purchase online clothing and hats with the "audisport" logo.

Defendants contend that the website is passive for jurisdictional purposes because it is not completely operational. (Defendants Motion pg. 17). The Defendant's authority does not support this contention. One of the cases Defendant cites is *K.C.P.L., Inc. v. Nash*, 1998 WL 823657, 1998 U.S. Dist. LEXIS 18464 (S.D.N.Y. 1998) (unpublished), however in that case, the fact that defendant's website was "under construction" was one of many factors that the Court used to determine lack of personal jurisdiction. In *K.C.P.L.* plaintiff registered the domain name "Reaction" and was sued by defendant Kenneth Cole who asserted trademark infringement. The Court found no jurisdiction because there was no showing plaintiff transacted business in New York and the domain name only pointed to an under construction website. *Id.*, 1998 WL 823657 at *4, 1998 U.S. Dist. LEXIS 18464 at *13. Further, plaintiff had not derived any revenue whatsoever, and plaintiff registered four domain names, only one of them allegedly resembled another entity's trademark. *Id.*, 1998 WL 823657, at *7–*8, 1998 U.S. Dist. LEXIS 18464 at *26. Lastly, it was not clear that "Reaction" was a famous trademark. *Id.* Based on all these factors, the Court found no jurisdiction. *Id.*, 1998 WL 823657 at *8, 1998 U.S. Dist. LEXIS 18464 at *29.

Defendant claims that parts of the website are under construction. (Defendant's Motion pg. 16). Defendant states that the Plaintiffs argue "various, intricate and nuances differences between web pages of the past that (1) are clearly 'under construction,' (2) no longer exist, and (3) that were developed under the guidance of Audi's own dealership Champion Audi." (Defendant's Reply pg. 2). However, Defendant fails to specify or provide evidence for which part of the website is under construction or no longer exists. Defendant states that presently no link exists for

goods and the email forwarding service is under construction and has never been used. (Defendant's Reply pg. 2). Defendant provides no evidentiary support for either of the statements. Further, because Defendant has not alleged to the contrary, the Court assumes the remaining parts of the website contained in Plaintiffs' allegations are operational. Thus, the Court finds that the fact that some parts of the website are under construction is not determinative in this analysis. Further, and most importantly, the webpages selling the email subscription service, and advertising space are operational.

It is important to note that Plaintiffs cannot point to a single transaction consummated in Michigan. Defendant also alleges that it has no customers. (Defendant's Motion pg. 5). Plaintiffs counter that even if no sale with a Michigan resident has occurred, it constitutes "transacting business" within the meaning of Michigan's long-arm statute. (Plaintiffs' Brief pg. 6). Plaintiffs contend that the *Sports Authority Michigan, Inc. v. Justballs*, 97 F.Supp.2d 806 (E.D.Mich.2000) *and Audi AG v. Izumi*, 204 F.Supp.2d 1014 (E.D.Mich.2002) cases both hold that maintaining a website accessible to Michigan consumers constitutes transacting business under Michigan' long-arm statute and purposeful availment under the Due Process Clause. *Id.* In *Izumi*, the website allowed customers to purchase items, and at a minimum, it attempted to solicit business from Michigan residents. *Id.* at 1021.

The *Izumi* case is instructive. In *Izumi*, the Court found purposeful availment based on the following:

From the evidence submitted by Plaintiffs, the website allows customers to purchase items and, at a minimum, attempts to solicit business from Michigan residents. Additionally, Plaintiffs, whose United States headquarters are in Michigan, maintain that Defendant, during negotiations with Plaintiffs, offered to sell the rights to this website to Plaintiffs.

*Id.* at 1021.

Here, it is undisputed that Defendant's website offers to sell email subscriptions and advertising space. Further in April 2003, the website offered to sell clothing and hats. As the Court in *Sports Authority* stated "[f]rom the record before this Court, it is evident that [defendant's] website does more than advertise on the internet." *Id.* at 814. The Court in *Sports Authority*, found that similar to the website here, visitors on the website can purchase products online. *Id.* Visitors can purchase the products by providing credit card and shipment information. *Id.* The Court found that this was sufficient to create a prima facie case for purposeful availment. Similarly, here the Court finds that because Michigan residents can purchase services and products on the website, it is sufficient for Plaintiff to create a prima facie case for purposeful availment.[1]

There are two key reasons why the Court finds that *audisport.com* is an interactive website. First, the website was sufficiently interactive because it offered to sell goods. Secondly, the goods sold on the website allegedly infringed upon Plaintiffs' trademarks who principally reside in Michigan. These two factors are sufficient

---

1. Defendant alleges that no goods are offered on the website, and that a link to the website of Champion Audi, an Audi Dealership in Pompano Beach, FL is as close as it gets. (Defendant's brief pg. 3). Plaintiffs, however, submit evidence demonstrating that around the time of the Complaint, the website offered to sell email subscriptions and advertising space. (Complaint, Exh. B). Further, Plaintiffs submit evidence that the website around April 2, 2003 offered to sell allegedly infringing hats, shirts, and cooler bags. (Decl. of Cherry, Exh. C). The Court finds the Plaintiffs' exhibits refute Defendant's contention.

to find sufficient interactivity and purposeful availment in Michigan.

### (ii) Effects Doctrine Analysis

For the "effects doctrine" to apply in this case, the Plaintiff must demonstrate (1) that the brunt injury was felt in Michigan; (2) the use of the Plaintiff's trademarks was intentional or deliberate; and (3) that the Defendant's acts were expressly aimed at the State of Michigan. *Ford Motor Co. v. Great Domains, Inc.*, 141 F.Supp.2d 763, 774 (E.D.Mich.2001).

Before analyzing the effects doctrine, the Court addresses Defendant's arguments that Plaintiffs have not been injured by its actions. Defendant argues that Plaintiffs have not suffered any injury because Defendant has used Plaintiffs' trademarks in a fair, nominal, non-commercial way and because Plaintiff voluntarily cancelled its federal registration with its "AUDI SPORT" trademark.

Defendant argues that Plaintiffs bring this action under its Trademarks "AUDI" the "four-rings" and "QUATTRO", and without a federal registration in "audisport" or "audi sport" as a matter of law "Plaintiffs may not be able to show injury to its primary Trademarks AUDI, the four rings, and QUATTRO because of its own voluntary actions." Although Plaintiffs cancelled its registration in "audisport" Plaintiffs allege that the domain name is confusingly similar and violates its trademark rights. (Complaint ¶ 48). Plaintiffs also allege that they still possess common law rights in those trademarks. At this stage in the proceeding, the Court finds that Plaintiffs have brought forth sufficient evidence to show injury to their primary trademarks regardless of whether they cancelled their "audisport" trademark.

█ The Court rejects Defendant's claim that its use of Plaintiffs' trademarks in a fair, nominal, non commercial way has not caused any compensable harm to Plaintiff. The Sixth Circuit has held that use of a word as a domain name is used as a "mark" and is not eligible for the fair use defense. *PACCAR Inc. v. TeleScan Technologies, L.L.C.*, 319 F.3d 243, 255 (6th Cir.2003). *PACCAR* stated that the fair use defense allows for a party's use "otherwise than as a mark, of a term which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." *Id.* at 255. Plaintiffs allege, and the Court agrees that Defendant's use its trademarks as short hand symbols are designed to draw attention, not to describe truthfully the attributes of Defendant's goods and services. Defendant uses Plaintiffs' trademarks in its domain name, incorporate the FOUR–RING logo into their own logo, and sell email addresses with Plaintiffs' trademarks. (Complaint, Exh. B). The Court finds that these activities are not used to describe truthfully any goods or services, and the Defendant is not eligible for the fair use defense.

Defendant also states that "some agreement" exists between he and Audi through Champion Audi Dealership. (*Id.*). Defendant also states that the only goods sold through the website are that of the Champion Audi Dealership in Pompano Beach, Florida. (*Id.*). Defendant states that the use and display of Audi Trademarks was requested by Champion Audi and benefitted Plaintiffs rather than causing injury. (*Id.*).

The Court also rejects Defendant's argument that an agreement existed between he and Audi. Defendant argues that Champion Audi encouraged and allowed him to place a link to Champion Audi on its website. Plaintiffs argue that this is irrelevant because no dealership has the authority to license to a third party Audi trademarks, and every Audi dealer signs an agreement that prohibits it to do so.

(Decl. of Scipione, ¶ 4; Exh. A attached to Decl. of Scipione). The Court finds that Champion Audi had no authority to allow the use of Plaintiffs' trademarks. Therefore, even if an agreement did exist between Defendant and Audi Champion, it does not confer the right for Defendant to use Plaintiffs' trademarks.

■ Plaintiffs argue that Defendant's contention that Plaintiffs are receiving a benefit from Defendant's promotion of its trademark constitutes a misunderstanding of trademark law. The Court agrees. The Court finds that the loss sustained by a trademark holder from the unauthorized use of its trademarks is the loss of the trademark holder's ability to control its reputation. (See Plaintiffs' Brief pg. 12). "In the context of trademark litigation, 'grounds for irreparable harm include loss of control of reputation, loss of trade, and loss of goodwill,' regardless of whether the infringer is putting the mark to a good or favorable use." *Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F.Supp.2d 398, 406 (D.N.J.1998) (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir.1992)).[2] As the *Liquid Glass* Court stated while "imitation is the sincerest form of flattery, it is equally true, especially in the context of trademark litigation, that flattery will often get you nowhere." *Id.* Accordingly, the Court rejects Defendant's argument that its actions have benefitted Plaintiffs.

■ The Court finds that the "effects doctrine" applies in this case. For the "effects doctrine" to apply, the Plaintiff must demonstrate that the brunt injury was felt in Michigan, the use of the Plaintiff's trademarks was intentional or deliberate and that the Defendant's acts were expressly aimed at the State of Michigan.

*Ford Motor Co. v. Great Domains, Inc.*, 141 F.Supp.2d 763, 774 (E.D.Mich.2001).

■ Plaintiffs' injury would be felt in Michigan. Audi AG transacts business in the United States exclusively through Volkswagen of America, Inc. which is headquartered in Michigan. (Dec. of Scipione ¶ 2–3, Exh. 2 attached to Plaintiff's Brief).

Plaintiffs state that Defendant uses an Internet Domain name *www.audisport.com* that features Audi's registered "AUDI" trademark and Defendant displays Audi's registered design trademarks of the "AUDI" trademark in Audi's stylized script and the Audi four ring logo. (*Id.*). Plaintiffs also claim that Defendant has advertised and sold a wide variety of infringing goods and services on his website. (*Id.*). Plaintiffs further allege that Defendant purposefully directed an injury toward Michigan by infringing upon its trademarks with knowledge that Plaintiffs reside here.

■ In the cases where the "effects doctrine" allows for personal jurisdiction, the defendant specifically targeted the plaintiff with an intentional tort. In the internet context, "simply registering someone else's trademark as a domain name and posting a website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another." *Panavision Intl. L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998) (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997)). For the "effects doctrine" to apply, there needs to be "something more" to demonstrate that the defendant directed his activity toward the forum state. *Id.* The Court notes that the "effects doctrine" should be applied with caution because a plaintiff always feels the

**2.** Although the *Liquid Glass* case was decided in the context of finding irreparable harm for a preliminary injunction, the same principle of trademark law is applicable here.

effect of a legal injury in its home forum. *Ford Motor Co. v. Great Domains, Inc.,* 141 F.Supp.2d 763, 777 (E.D.Mich.2001), (quoting *Imo Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 261 (3d Cir.1998)).

In *Ford Motor Co. v. Great Domains, Inc.,* 141 F.Supp.2d 763, 777 (E.D.Mich. 2001), the Court took notice of the fact that the trademarks at issue were of "Volvo," "Jaguar," "Stang," "Ford," "Lincoln," and "Mercury" were well known throughout the United States and England where the defendants reside. *Id.* at 774. Thus, the Court found it "highly unlikely" that the incorporation of Ford's trademarks could have resulted in negligence. *Id.* Similarly here, the Court finds that Defendant deliberately registered Plaintiffs' trademarks.

The *Ford* Court stated five factors to assess the level of individual targeting needed under the "effects doctrine" and they are as follows:

(1) whether the trademark owner has been directly solicited to purchase the domain name, *see Panavision Intl. L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998);

(2) whether the domain name registrant has registered domain names incorporating other protected marks, *see id.;*

(3) whether the domain has been offered for sale by the current registrant and, if so, the price sought;

(4) whether the registrant has a preexisting, legitimate use for the domain name; and

(5) any other factors which demonstrate that the act of incorporating the protected mark into a domain name was "expressly aimed" at the forum where trademark owner resides." *Id.* at 777.

Here, there is no evidence that Plaintiffs have been solicited to purchase Defendant's domain name or that Defendant has registered domain names incorporating other protected marks. Further, Plaintiffs do not allege that Defendant has offered the current domain name for sale but they do sell email subscriptions and merchandise with the name "audisport." Plaintiffs also dispute whether Defendant has a preexisting legitimate use for its domain name. Plaintiffs allege that it Defendant is attempting to profit and capitalize on the goodwill that Audi has developed in its trademarks. (Complaint, ¶ 14).

*McMaster–Carr v. Supply Depot, Inc.,* 1999 WL 417352 (N.D.Ill.1999) (unpublished) is helpful here. In *McMaster,* the plaintiff sued defendant for tradename infringement. Defendant moved to dismiss the case for lack of personal jurisdiction. The Court found that "although this case presents a close question" that defendant's actions satisfy the effects test. *Id.* at *12. The important fact was that the defendant "intentionally registered [plaintiff's] mark as its domain name, an act that it knew would harm Illinois-based [plaintiff]" and accordingly it could anticipate being haled into court there. *Id.* The plaintiff argued that defendant's actions were "obviously targeted" at it, whose principal place of business is in Illinois. *Id.* at *7. Similarly, here Plaintiffs' allege that Defendant deliberately infringed upon its trademarks with knowledge that Audi resides in Michigan. Taking Plaintiffs allegations as true, the Court finds that Defendant could anticipate being haled into Court in Michigan.

The Court finds there is sufficient evidence to find that Defendant deliberately infringed upon Plaintiffs' trademarks and expressly aimed at Michigan. It is important to note that Plaintiffs' central allegation that Defendant is attempting to profit and capitalize on the goodwill that Audi has developed in its trademarks. This allegation is bolstered by the fact that Defendant sells products based on upon the "audisport" name. This allegation tips the scale, and is sufficient to find that Defen-

dant's action were expressly aimed at Michigan. Plaintiffs' trademarks are widely known, and the Court holds that Plaintiffs allegations are enough to make a prima facie case that Defendant is deliberately infringe on its trademarks.

In sum, the Court finds that the "effects doctrine" applies because the Plaintiff has demonstrated that the brunt of the injury is felt in Michigan, the use of its trademarks was intentional or deliberate and that Defendant's acts were expressly aimed at the State of Michigan.

The Court finds that because the website is sufficiently interactive and the effects doctrine applies, Defendant can be haled into this Court. Viewing all the facts in a light most favorable to and drawing all reasonable inferences in favor of Plaintiff, Plaintiff's allegations support a prima facie showing as to the "purposeful availment" requirement. Haling Defendant into this Court, based upon the actions described above, cannot be said to be based on "random," "fortuitous," or "attenuated" contacts. Accordingly, Defendant has "purposefully availed" himself of the benefits of transacting business or causing events to occur in Michigan. The Court must therefore move to the second step in the analysis.

### b. Forum–Related Activities

▬ The second element evaluated in the personal jurisdiction inquiry is whether the current controversy is related to Defendant's forum-related activities. *Id.* at 815. The current controversy has to do with Defendant's alleged infringement of Plaintiffs' trademarks. Plaintiffs allege that soliciting sales through an infringing website to Michigan residents directly and purposefully is related to this forum. Plaintiffs also allege this infringement harmed Defendants whose principally reside in Michigan. Taking all Plaintiffs' factually supported allegations as true as outlined above, the Court finds that the current controversy is related to Defendant's activities in Michigan. The Court must therefore move on to the final step in the analysis.

### c. Reasonableness

▬ Where the first two elements of the test for personal jurisdiction are met, there is an inference that the exercise of jurisdiction is reasonable. *Id.* (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir.1996)). The factors to consider in assessing reasonableness are:

...the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. [A court] must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

▬ In this case, the Court holds that the exercise of jurisdiction over Defendant is reasonable. Noting that there exists the inference of reasonableness, the Court finds that Michigan has a strong interest in protecting companies that principally reside here against trademark infringement. The Court also finds that Plaintiffs have a strong interest in obtaining relief. The Court finds that Plaintiffs's interest in obtaining relief, coupled with Michigan's interest in protecting companies that reside there, significantly outweighs whatever burden may be placed upon Defendant in having to defend this action in Michigan.

Accordingly, based upon the entirety of the discussion above, the Court holds that the exercise of personal jurisdiction over Defendant in this case comports with the notions of fair play and substantial justice

required by the Due Process Clause of the United States Constitution.

## II. VENUE CLAIMS

Defendant's argue that it is an unreasonable burden for him too be subjected to litigation in Michigan. Defendant states that "witnesses with important evidence are likely to be located outside of Michigan." (Defendant's motion pg. 19). Defendant further argues that the convenience of the witnesses and parties lean toward Connecticut as the better venue for this dispute.

Plaintiffs argue that it chose a forum where it is strongly connected, and therefore its choice is entitled to deference. (Plaintiffs' Response pg. 17). Plaintiffs further argue that the convenience of the parties and witnesses is neutral. (*Id.* at 18). Plaintiffs contend that Defendant is attempting to merely shift the inconvenience from one party to another. (*Id.* at 17). Plaintiffs state that Defendant has brought forth no evidence to demonstrate that the transfer of venue strongly favors Defendant. (*Id.* at 20).

## A. Motion to Transfer Venue

### *ANALYSIS*

### A. Standard

District courts have wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to "prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Helder v. Hitachi Power Tools, USA Ltd.,* 764 F.Supp. 93, 95–96 (E.D.Mich.1991) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.

§ 1404(a). In making this decision, the Court must determine whether: "(1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and the witnesses' convenience." *Thomas v. Home Depot, U.S.A., Inc.,* 131 F.Supp.2d 934, 936 (E.D.Mich.2001)(Gadola, J.)(citing *United States v. P.J. Dick, Inc.,* 79 F.Supp.2d 803, 805–06 (E.D.Mich. 2000)). The movant bears the burden of demonstrating that "fairness and practicality strongly favor the forum to which transfer is sought." *Id.* (quoting *Rowe v. Chrysler Corp.,* 520 F.Supp. 15, 16 (E.D.Mich.1981)). The movant must make this showing by a preponderance of the evidence. *Id.* (citing *International Union, U.A.W. v. Aluminum Co. of Am.,* 875 F.Supp. 430, 433 (N.D.Ohio 1995)).

In assessing a motion brought under § 1404(a), the Court must take into account and weigh the following factors: "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of processes to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice." *MCNIC Oil & Gas Co. v. IBEX Resources Co.,* 23 F.Supp.2d 729, 738–39 (E.D.Mich. 1998) (quoting *Helder,* 764 F.Supp. at 96). In short, "the Court may consider any factor that may make any eventual trial 'easy, expeditious, and inexpensive.'" *Helder,* 764 F.Supp. at 96 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

#### a. *Deference to Plaintiffs' choice of Forum*

Generally, a plaintiff's choice of forum will be given substantial defer-

ence. *Audi AG & Volkswagen of America, Inc. v. Izumi,* 204 F.Supp.2d 1014, 1023 (E.D.Mich.2002) (citing *Grand Kensington LLC v. Burger King Corp.,* 81 F.Supp.2d 834, 836 (E.D.Mich.2000)). A plaintiff's chosen forum, however, is not sacrosanct, and will not defeat a well-founded motion for change of venue. *Thomas,* 131 F.Supp.2d at 937 (citing *Kepler v. ITT Sheraton Corp.,* 860 F.Supp. 393, 399 (E.D.Mich.1994)). This is especially true where a plaintiff has little or no connection to the chosen forum. *United States v. Cinemark USA, Inc.,* 66 F.Supp.2d 881, 889 (N.D.Ohio 1999). In such a case, the plaintiff's reason for choosing the forum—and remaining in the forum—is diminished and thus should be given less weight. *Id.*

The Court finds that, because Plaintiffs have substantial connections to the Eastern District of Michigan, its choice of forum is entitled to substantial deference. Plaintiffs principally reside in the Eastern District of Michigan. (Decl. of Scipione ¶ 2). As such, Plaintiff has substantial connections with the Eastern District of Michigan and its choice of this forum is entitled to deference in the § 1404 analysis.[3]

**b. *Convenience of the Parties and Witness related factors***

The convenience of the parties is neutral. Defendant has not demonstrated that it would be less convenient for him to travel to Michigan, then for Plaintiffs to travel to Connecticut. Further, Defendant states that its witnesses reside in Atlanta and in Florida. (Defendant's Motion pg. 18). Defendant concludes that it would be more inconvenient for it to litigate here,

but provides no support for this contention.

Other than Bob D'Amato, Defendant has named no other potential witnesses who reside in Connecticut. Plaintiffs, on the other hand, set forth potential Audi witnesses located in the Eastern District, and what they will testify about. (Decl. of Scipione ¶¶ 9–11).

 Witnesses' convenience is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a). *Thomas,* 131 F.Supp.2d at 937 (citing *Hunt v. TACA Int'l Airlines, S.A.,* No. 93–3723, 1994 WL 285023, at *2 (E.D.La. June 22, 1994)). In fact, federal courts have considered convenience of the witnesses to be "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a)." *MCNIC Oil,* 23 F.Supp.2d at 739 (quoting 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d §* 3851 (2d ed.1986)). In weighing the convenience of the witnesses, more important than the raw number of witnesses living in a particular jurisdiction is the residence of the key witnesses. *Id.* (citing *SMI–Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 113 F.Supp.2d 1101, 1105 (S.D.Tex.2000)). One chief witness's convenience, in fact, may outweigh the convenience of other, less significant witnesses. *Id.* The moving party should generally provide each witness's name and the subject matter of the witness's anticipated testimony. *Id.* In the Eastern District of Michigan, courts have held that "convenience of witnesses who are also employees is considered as part of

---

**3.** Defendant contends that Plaintiffs are not residents of Michigan and its choice of forum is entitled to less weight. (Plaintiff's motion pg. 18). The Court rejects this argument. The record shows that Audi AG conducts all of its U.S. business operations exclusively through Volkswagen, which has its principal place of business in Auburn Hills, Michigan. (Decl. of Scipione ¶ 2).

a motion to transfer and is not discounted." *Verve, L.L.C. v. Becton Dickinson & Co.*, 2002 WL 551031, at *2, 2002 U.S. Dist. LEXIS 6483, at *7–8 (E.D.Mich. March 29, 2002) (citing *Thomas*, 131 F.Supp.2d at 938–39).

Plaintiffs argue that Defendant has put forward no evidence that the convenience of the witnesses in this action would be better served by shifting venue to Connecticut. Plaintiffs argue that they, unlike Defendant, have set forth witnesses located in the Eastern District of Michigan and what their testimony will offer. Their testimony will concern the existence and use by Audi of its trademarks and concerning Audi's damages. (Decl. of Scipione ¶¶ 9–11). Plaintiffs further argue that any necessary experts to testify regarding the confusion and dilution of Audi's trademarks are not likely to prefer one venue over another. Plaintiffs state the Defendant does not meet its burden for a change of venue because of its failure to produce the location of any non-party witnesses in Connecticut as opposed to Michigan. The Court agrees.

In sum, the Court concludes that the convenience to the parties factor against granting Defendant's motion to transfer. In making this determination, the Court is mindful that "a transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Audi AG*, 204 F.Supp.2d at 1023 (citing *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F.Supp. 371, 377 (W.D.Mich.1990)).

**(i) Access to Sources of Proof**

A "fundamental principle" guiding the Court's analysis is that "litigation should proceed 'in that place where the case finds its 'center of gravity'.'" *Laitram Corp. v. Hewlett–Packard Co.*, 120 F.Supp.2d 607, 609 (E.D.La.2000)(quoting *Teknekron Software Sys., Inc. v. Cornell Univ.*, 1993 WL

215024, at * 7 (N.D.Cal. June 14, 1993)). Also, while "the location of physical evidence such as the wreckage of a crashed plane ought to be given more weight in the balancing analysis under § 1404(a)", "the location of documentary evidence is a minor consideration." *Cinemark*, 66 F.Supp.2d at 890 (quoting *Picker Intern., Inc. v. Travelers Indem. Co.*, 35 F.Supp.2d 570, 574 (N.D.Ohio 1998)).

Defendants claim:

[c]ertainly some of Plaintiffs' proofs may come from New Jersey, Michigan or Germany. Defendants' sources of proofs will come from Connecticut, with emails possibly located in Atlanta and Florida. Records will be required to be made available as will the parties representatives. Most, if not all of Defendant's records are in Connecticut under any circumstances.

Again, Defendant does not state that any witnesses are located in Connecticut. According to Defendant's own allegations stated above, the only source of proof located in Connecticut is "records." The location of documentary evidence is a minor consideration. *Cinemark*, 66 F.Supp.2d at 890. Plaintiffs allege that its documents are located in Michigan. Plaintiffs also state that they will call witnesses located in this District. The Court finds that Defendant fails to meet its burden with this factor.

The Court finds that Defendant asserts no other factor to weigh in favor of a transfer of venue. Defendant states that all primary events took place in Connecticut, but venue is proper in Michigan when an out-of-state defendant allegedly operates a website that in fringes on the rights of a Michigan trademark holder. *Audi AG v. Izumi*, 204 F.Supp.2d 1014 (E.D.Mich.2002).

Based on the discussion above, the Court holds that Defendant fails to meet its burden showing that "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F.Supp.2d 934, 936 (E.D.Mich.2001) (quoting *Rowe v. Chrysler Corp.*, 520 F.Supp. 15, 16 (E.D.Mich.1981)). In this case, the Court finds that because Plaintiff chose a forum where it is strongly connected, and the convenience of the parties analysis does not favor either party, Defendant is attempting to merely "shift the inconvenience from one party to another."

### B. Motion to dismiss for venue

Defendant states it is moving for dismissal for improper venue pursuant to Rule 12(b)(3), but provides no basis or support for this claim. 28 U.S.C. § 1391 states that venue is proper in any district in which a substantial part of the events giving rise to the claim occurred. As stated above, the Court finds that when an out-of-state defendant allegedly operates a website that infringes on the rights of a Michigan trademark holder, it is sufficient for venue in Michigan. *Audi AG v. Izumi*, 204 F.Supp.2d 1014 (E.D.Mich.2002).

### C. Defendant's request for sanctions

▋ The Court denies Defendant's request for sanctions in violation of Local Rule 5.1(a) of the Eastern District of Michigan. Plaintiffs' use of color graphics in its statement of issues would have been more appropriate as an Exhibit. However, the Court finds that it is not to the degree as to warrant sanctions.

### III. DEFAMATION CLAIM

#### BACKGROUND

Defendant's allegations are based on a March 19, 2004 letter sent by Plaintiffs' counsel to Network Solutions, Inc. ("NSI"). (Answer, Affirmative Defenses and Counterclaim ¶ 106). Defendant states that the letter contains false statements about D'Amato to Networks Solutions, Inc. Defendant's Counterclaim Count VIII contends that "Plaintiffs counsel sent a letter on or about March 2003, making false statements about D'Amato to Networks Solutions, Inc." (Answer, Affirmative Defenses and Counterclaim ¶ 106).

The letter requested that NSI terminate Defendant's private registration in order for Plaintiffs retrieve Defendant's address to effectuate service. The letter in pertinent part states:

Audi has alleged claims against the Registrant in the above described litigation for trademark and trade dress dilution under 15 U.S.C. § 1125(c), federal trademark infringement under 15 U.S.C. § 1114, false designation of origin or sponsorship under 15 U.S.C. § 1125(a), cyberpiracy and common law trademark infringement.

Audi attempted to serve a summons and a copy of the complaint upon the Registrant of the domain name audisport.com at the address provided in the WHOIS database. A copy of the WHOIS record for audisport.com is attached hereto for your reference. When a process server attempted to serve the Registrant at the address provided in the WHOIS record, the process server was explicitly informed that the Registrant did not live at that address. The occupant further stated that he was not affiliated in any way with the domain name audisport.com. The process server was unable to serve the defendant at the address listed in the WHOIS database. A copy of the process server's affidavit of failed service is attached hereto for your reference.

After receiving notice that the process server had failed to serve the complaint upon the defendant, this office sent a copy of the complaint to legal counsel

for the Registrant. Audi requested that counsel for the Registrant voluntarily accept service of process on behalf of his client. In a letter dated March 18, 2004, counsel for the Registrant refused to accept service of process, and stated that his client's registration for the domain name audisport.com is a private registration. A copy of this letter is attached hereto for your reference.

Several conclusions can be drawn from the actions of the Registrant in this matter. First, the Registrant has clear knowledge that Audi has filed suit against the registrant. Counsel for the Registrant indicates in his letter of March 18, 2004 that he has discussed with the Registrant the Registrant the Registrant's unwillingness to voluntarily accept service of process. Second, the Registrant is attempting to use Network Solutions Private Registration service as a means for evading service of process. The Registrant enabled the Private Registration option only after he became aware that Audi had filed suit against him.

If Audi is unable to obtain true and correct contact information from Network Solutions, Audi will be forced to file a series of pleadings with the Court to arrange for an alternate method of service. Audi would incur significant expense, and the prosecution of this case would be significantly delayed if Audi must resort to these steps to complete service of process upon the Registrant. As such, Audi respectfully requests that in accordance with the Private Registration Agreement, Network Solutions cancel the Registrant's Private Registration Agreement and populate the public WHOIS record with the Registrant's contact information.

(Plaintiff's Motion Exh. A).

Defendant's Counterclaim Count VIII contends that "Plaintiffs counsel sent a letter on or about March 2003, making false statements about D'Amato to Networks Solutions, Inc." (Answer, Affirmative Defenses and Counterclaim ¶ 106). The portion of the letter Defendant alleges defame him are the statements "[w]e believe ... that our legal rights are clearly infringed by the current holder of the domain name.' and or that Mr. D'Amato falsely registered the domain name AUDISPORT.com using a false address." (*Id.* at ¶ 107).

Defendant also states in his response that this Court cannot decide the issues raised by Plaintiffs' motion without additional discovery. (Defendant's Response pg. 9).

Plaintiffs argue that Defendant's claim must be dismissed under Rule 12(b)(6) on the grounds that the correspondence is absolutely privileged under the law of defamation and is further immunized under the Noerr–Pennington doctrine because it involved Plaintiffs' petitioning of this Court. Plaintiffs also argue that no matters outside the pleadings need to be considered. (Plaintiffs Reply pg. 2). Plaintiffs claim that Defendants claim is based on a single communication sent by Plaintiff's counsel to NSI.

## A. Standard of Review of Rule 12(b)(6) Motion

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion alleges that a complaint has failed to state a claim upon which relief can be granted. In evaluating such a motion, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations in the complaint as true, and "should not [grant the motion] unless is appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).

The purpose of a 12(b)(6) motion is "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). Accordingly, when reviewing a 12(b)(6) motion to dismiss, the court only examines whether the pleadings state a claim for which relief may be granted, and does not review additional evidence. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997). "As the First Circuit stated, '[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976)).

**B. Applicability of Pennsylvania Law**

Restatement 2d, Conflict of Laws § 149 states:

> In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The letter in question was addressed and sent to NSI's offices in Drums, Pennsylvania. (Plaintiff's Brief Exh. A). Under the Restatement 2d, Conflict of Laws § 149, in a defamation action not involving a publication in more than one state, the local of law of the state of publication governs. Here, the Court follows the Restatement, and applies the law where the publication took place—Pennsylvania.

**C. Elements of Defamation**

 Defamation under Pennsylvania law requires the plaintiff to set forth: (1) the defamatory character of the communication; (2) publication of the communication to a third party; (3) the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury. 42 Pa.C.S. § 8343; *Feldman v. Lafayette Green Condominium Association*, 806 A.2d 497 (Pa.Cmwlth.2002). Libel is a maliciously written publication that tends to blacken a person's reputation or expose that person to public hatred, contempt or ridicule. *Feldman.* The defamatory character of a statement is a question of law for the court. *Id.* The defendant in a defamation action has the burden of proving a privilege to make the statement. 42 Pa.C.S. § 8343.

**D. Discovery issue**

Defendant states in his response that this Court cannot decide the issues raised by Plaintiffs' motion without additional discovery. (Defendant's Response pg. 9). However, Defendant's counterclaim was based upon statements made in a single communication to NSI. Defendant's Counterclaim Count VIII contends that "Plaintiffs counsel sent a letter on or about March 2003, making false statements about D'Amato to Networks Solutions, Inc." (Answer, Affirmative Defenses and

Counterclaim ¶ 106). It is important to note that Plaintiffs' Motion to Dismiss addressed one issue: Whether its correspondence was absolutely privileged, and therefore cannot be the basis of a claim for defamation. (Plaintiff's Motion pg. 2). The additional discovery requested by Plaintiffs addresses the viability of the defamation claim, basically whether Plaintiffs' assertion were in fact true and whether Plaintiffs' litigation was in good faith. (Defendant's Response pg. 2; see also Defendant's Response generally). This discovery is not pertinent to Plaintiffs' privilege claims. Accordingly, the Court finds that additional discovery is not necessary in this case. Further, although Defendant does not submit the NSI Correspondence letter as an exhibit, the Court still considers it in this motion. As the Sixth Circuit stated:

> Fed.R.Civ.P. 10(c) provides that "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Rule 10(c) is permissive, and a plaintiff is under no obligation to attach to his complaint documents upon which his action is based. However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss by failing to attach a dispositive document upon which it relied. Hence, the Seventh Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of

the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." We believe that this approach is appropriate.

*Weiner v. Klais & Co., Inc.*, 108 F.3d 86,89 (6th Cir.1997).

### E. Privilege

 The Court finds that Plaintiffs' communication to NSI were privileged. Under Pennsylvania law, an absolute privilege applies to communications made by attorneys, judges, witnesses and parties in the course of or pertaining to any stage of a judicial proceeding. *Pawlowski v. Smorto*, 403 Pa.Super. 71, 588 A.2d 36, 41 (1991).[4] The privilege is not limited to structured or formal proceedings, it is broad enough to include situations where a client's cause is advocated under less formal circumstances. *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22, 25 (1984). Pennsylvania law states there is no civil liability for publishing alleged defamatory matter in a judicial proceeding or as part of a judicial proceeding if it has some relation to the proceeding. *Morley v. Gory*, 814 A.2d 762, 766 (Pa.Super.2002).

Plaintiffs states that the Court can easily determine that its March 19, 2004 correspondence was made in furtherance of and related directly to this judicial proceeding." (Plaintiffs' brief in support of Motion to Dismiss, pg. 10). Plaintiffs' allege that Defendant used a fictitious address of 27 Butler St., Meriden, CT 06450 as stated

---

4. The Court also applies Pennsylvania litigation privilege law. There is the argument, although not raised by the parties, that although Pennsylvania's substantive law should apply to the defamation claim, privilege rules are evidentiary and procedural. Therefore, federal privilege law should determine whether the privilege applies. When a federal question is presented, federal not state privilege law applies pursuant to Rule 501 of the Federal Rules of Civil Procedure. This rule also applies to supplemental claims in a lawsuit

that includes a federal claim. (See Advisory Committee Notes to FRE 501). However, a federal court may defer to state privilege law as a matter of comity. *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643–44 (7th Cir. 1980). The Court here, defers to Pennsylvania privilege law because "defamation is an area of state law, and defamation privileges are an integral part of the law of defamation." *Baravati v. Josephthal, Lyon & Ross*, 28 F.3d 704, 707 (7th Cir.1994).

in the publicly available WHOIS Record of December 19, 2003. (*Id.; see also* Exh. B attached). Plaintiffs' allege that after Defendant received a cease and desist letter, Defendant obtained a Private Registration Agreement from NSI. (Plaintiffs' Brief in support of Motion to Dismiss, pg. 11; *see also* Exh. C attached). Plaintiffs filed this lawsuit and attempted to serve Defendant at 27 Butler St., Meriden, CT 06450. (Plaintiffs' Brief in support of Motion to Dismiss, pg. 11). The Affidavit of Non–Service states:

> Service of Summons and Complaint was attempted upon Bob D'Amato d/b/a Quattro Enthusiasts, 27 Butler Avenue, Meriden, CT on February 26, 2004 at 2:10PM. This address is a one family house. Current tenant states there is no Bob D'Amato living at this address. Database research was completed which failed to provide a current address.

(Plaintiffs' Brief in support of Motion to Dismiss, Exh. A).

Plaintiffs then requested that Defendant's counsel accept service pursuant to Fed. R. Civ. Proc. 4(d). Defendants' counsel refused to accept service and provide Defendants' address. (*Id.*). Defendants then contacted NSI and requested that it cancel the Private Registration Agreement and require Defendant to provide accurate contact information.

Plaintiffs state that as a result of the letter, NSI required that Defendant provide a correct address, and they were finally successful in effecting service on April 8, 2004. (Plaintiffs' brief in support of Motion to Dismiss, pg. 13). Plaintiffs state that this letter was sent for the purpose of effecting service and this relates directly to this proceeding. The Court agrees. It is undisputed that the address listed on then WHOIS record was incorrect.

Pennsylvania law states that the "protected realm" is limited "to those commu-nications which are issued in the regular course of judicial proceedings and which are pertinent and material to the relief sought." *Pawlowski*, 403 Pa.Super. at 81, 588 A.2d 36 (quoting *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351 (1986)). Although there is no Pennsylvania precedent that specifically addresses this factual scenario, the Court finds that Plaintiffs letter to NSI was issued in the regular course of judicial proceedings and was pertinent and material to the redress sought. The alleged defamatory statements were made in Plaintiffs' attempt to persuade NSI to provide Defendant's address for service of process. Service of process is required in the regular course of judicial proceedings.

A recent case in the Northern District of Illinois is similar to these facts. In *NSB Technologies, Inc. v. Specialty Direct Marketing*, 2004 WL 1918708 (N.D.Ill. 2004, Aug. 20, 2004), the defendant asserted a counterclaim of defamation. The claim arose during discovery for a copyright infringement lawsuit, where defendant's attorneys sought access to plaintiff's computer. *Id.* at *1. When the attorneys arrived, plaintiff proclaimed "I will not allow access to my computer files prior to 1995. *Id.* That f—ing thief stole my computer programs." *Id.* The defamation claim alleged that the statements were per se false and directed for malicious injury. *Id.* The Court found it appropriate to recognize a federal litigation privilege. *Id.* at *3. The Court held that the policy behind such a privilege is to provide litigants with unfettered access to courts, and the opportunity to fully litigate without fear of facing subsequent derivative tort actions. *Id.* at *4. The Court cited Illinois and California law and stated that once it is determined that the underlying statement is related to the litigation, there can be no defamation action regardless of the motive or the unreasonableness of the conduct. *Id.* Similarly here, the Court finds that Plaintiffs' statements were related to and

in furtherance of the litigation. Similar to the law applied in *NSB Technologies,* Pennsylvania law states all doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief sought is to be resolved in favor of pertinency and materiality. *Pawlowski* at 81, 588 A.2d 36 (quoting *Greenberg v. Aetna Ins. Co.,* 427 Pa. 511, 516, 235 A.2d 576 (1967)). Accordingly, the Court holds that the communication is privileged.

Defendant alleges that WHOIS database was not updated and that was the reason for the incorrect address. (Defendant's Brief in Opposition, pg. 15). But, the record shows that Plaintiffs attempted to serve Defendant, and also contacted Defendant's counsel for service. The next step of contacting NSI was in furtherance of its clients' interest and related to this proceeding. It is important to note that Defendant has failed to substantively address the litigation privilege issue. The purpose of a 12(b)(6) motion is "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). In this matter, taking everything alleged in Defendant's Counterclaim as true, the Court finds that this communication is privileged for the reasons stated above. Accordingly, the Court grants Plaintiffs' Rule 12(b)(6) Motion to Dismiss.

## F. Noerr–Pennington Doctrine

Plaintiffs state:

[a]s subsequent decisions have made clear, however, the First Amendment right to petition extends beyond the antitrust context, and Noerr–Pennington provides immunity from a broad range of state-law claims that arise out of a party's attempt to protect its rights in the courts. *Pennwalt Corp. v. Zenith Laboratories,* 472 F.Supp. 413, 424 (D.Mich.1979)

(Plaintiff's Brief in support of Motion to Dismiss, pg. 13).

The doctrine gains its name from two antitrust cases where the Supreme Court refused to interpret the Sherman Act as to prohibit petitioning activity because the "right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." *DIRECTV, Inc. v. Cavanaugh,* 321 F.Supp.2d 825, 840 (E.D.Mich.2003) (quoting *Eastern Railroad Presidents v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)).

The Noerr–Pennington doctrine, as originally formulated by the Supreme Court, rests on two separate grounds. First, a statutory interpretation of the Sherman Act that limits the scope of the Act so as to not reach activity associated with the political process. *DIRECTV* at 840 (quoting *Noerr,* 365 U.S. at 137–38, 81 S.Ct. 523). Second, the First Amendment right of citizens to petition the government. *Id.*

As explained below, the Noerr–Pennington cases were decided based in part on the Sherman Act's interpretation, and its precedents do not fit squarely into the facts presented here. The Court could still find that the correspondence here is protected first amendment activity. This case is best decided under the litigation privilege outlined above.

Some Courts have been reluctant to apply the Noerr–Pennington doctrine when the dispute is not regulated by the Sherman Act.[5] *DIRECTV* at 840. The *DI-*

---

5. Defendant failed to make this point in his pleadings and instead focused on the sham exception to the doctrine and the fact that NSI is not a government agency. The latter point was emphasized by Defendant who claimed that because NSI is a private company the Noerr–Pennington doctrine may not

*RECTV* Court discussed this problem in detail and noted that DIRECTV cited a variety of antitrust cases in support of its claim for immunity, none of which addressed the viability of the doctrine in non-antitrust conflicts.[6] *id.* The Court stated that numerous courts have acknowledged the incongruity of applying the Noerr–Pennington doctrine outside the antitrust context where immunity is cognizable only on First Amendment grounds. *Id.*

Initially, courts were careful in referring to the Noerr–Pennington doctrine only *by analogy* when discussing the First Amendment right to petition. *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir.1992) (finding "support *by analogy* to the Noerr–Pennington doctrine" that immunity extends to petitioning activity) (emphasis added). However, courts and practitioners citing those initial cases have loosely referred to the immunity afforded by the Petition Clause as the "Noerr–Pennington" doctrine. Consequently, there is a marked inconsistency in the manner in which immunity afforded by the First Amendment is discussed.

As quoted in *DIRECTV*:

While we do not question the application of the right to petition outside of antitrust, it is a bit of a misnomer to refer to it as the Noerr–Pennington doctrine; a doctrine which was based on *two* rationales. In our view, it is more appropriate to refer to immunity as Noerr–Pennington immunity only when applied to

antitrust claims. In all other contexts, including the present one, such immunity derives from the right to petition. *DIRECTV* at 840 quoting *Cardtoons* at 889–890.

To the extent that Supreme Court precedent can be read to extend Noerr–Pennington outside of the antitrust context, it does solely on the basis of the right to petition. *Cardtoons v. Major League Baseball Players Assoc.*, 208 F.3d 885, 890 (10th Cir.2000). As *Cardtoons* stated, the distinction is not completely academic because the Noerr–Pennington precedents are founded in part upon a construction of the Sherman Act, and are not completely interchangeable with cases based solely on the right to petition. *Id.*

The Court could find that Plaintiffs' correspondence to NSI is protected 1st Amendment activity. There is precedent stating that actions of a trademark holder to protect its trademark is protected first amendment activity. *Virtual Works v. Network Solutions*, 1999 WL 1074122 (E.D.Va., Nov. 23, 1999) (unpublished).

*Pennwalt v. Zenith*, 472 F.Supp. 413 (E.D.Mich.1979), cited by Plaintiffs is the closest factually to our matter. In *Pennwalt*, the plaintiff sued defendant for unfair competition and trademark infringement. The defendant counterclaimed alleging antitrust claims. The central concept of the counterclaims was defendant's allegations that by threaten-

---

apply at all. However, because the correspondence was in furtherance of the litigation (i.e. petitioning the court), the Defendant's argument is to no avail.

**6.** Similarly here, most of Plaintiffs' cases were decided in the antitrust context. In *Blue Cross v. Group Hospitalization and Medical Services, Inc.*, 744 F.Supp. 700 (E.D.Va.), aff'd in relevant part, 911 F.2d 720 (4th Cir.1990), the case was decided on the grounds that "[g]ood faith efforts to enforce trademark rights do not violate the Sherman Act." Simi-

larly, in *Letica Corp. v. Sweetheart Cup Co.*, 790 F.Supp. 702 (E.D.Mich.1992) the plaintiff sought a declaratory judgment that it had not infringed upon defendant's protected trade dress rights, and it brought an action for unfair competition and antitrust violations. The Court stated that holding "trade dress protections actions amount to antitrust violations would set a dangerous precedent resulting in protracted litigation and serious chilling effects on the exercise of protected first amendment rights."

ing and bringing lawsuits against retailers who deal with plaintiff and sell plaintiff's products, plaintiff is attempting to monopolize the market. The Court dismissed these claims based on plaintiff's constitutional right to seek redress from wrong in the courts. The Court stated "this right has its genesis in the First Amendment to the United States Constitution and may be considered part of what has become the Noerr–Pennington doctrine." *Id.* at 424 (internal citations omitted). The Court held that plaintiff shall not be subjected to liability for its attempt to have its rights protected in the courts. *Id.*

In *Pennwalt*, the defendant claimed that the actual lawsuits were antitrust violations. Here Plaintiffs seek to apply the doctrine to immunize statements made in furtherance of its lawsuit. The Court could, however, find that because the statement to NSI was made in furtherance of their lawsuit, it is protected first amendment activity and similar to the plaintiff in *Pennwalt.* Plaintiffs here should not be subjected to liability for its attempt to have its rights protected by the courts.[7] However, as stated previously, the Court holds that this case is better decided under the litigation privilege outlined above.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Dismiss for

 a. Lack of Personal Jurisdiction;

 b. Improper Venue;

 c. Or in the Alternative, Transfer Case for Improper Venue or For Convenience.

For the reasons stated above, the Court GRANTS Plaintiffs' Motion to Dismiss Count VIII of Counterclaim for "Defamation."

## SO ORDERED

---

7. The Defendant addressed at length the "sham exception" to the Noerr–Pennington doctrine. Even if Noerr–Pennington applies, Defendant's allegations regarding the "sham exception" of the Noerr–Pennington doctrine are without merit. The sham litigation exception applies to matters where there is "improper interference with governmental processes' that amount to illegal reprehensible practices such as perjury, fraud, conspiracy with or bribery of governmental decision makers, or misrepresentation, or is so clearly baseless as to amount to abuse of process." *California Motor v. Trucking Unlimited,* 404 U.S. 508, 512–13, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The evidence demonstrated by Plaintiffs shows that the lawsuit has merit, and Defendant's contentions regarding better ways for Plaintiffs to effectuate process are not relevant. The Defendant has not alleged or provided support for any conduct by Plaintiffs to fall within the sham exception of Noerr–Pennington.