**FORD MOTOR COMPANY, a Delaware corporation, Plaintiff,**

v.

**Allen CROSS, an individual, and Fomoco Obsolete, an entity of unknown origin, Defendants.**

No. 05–72309–DT.

United States District Court, E.D. Michigan, Southern Division.

June 9, 2006.

Cody W. Zumwalt, Gregory Phillips, Howard, Phillips & Andersen, Salt Lake City, UT, Kathleen A. Lang, Dickinson Wright, Detroit, MI, Dan Stock, Mark Sparschu, Tim Quinlan, Ford Motor Co., Dearborn, MI, for Plaintiff.

## *ORDER OF DEFAULT JUDGMENT*

CLELAND, District Judge.

This Court has adopted the Report and Recommendation of Magistrate Judge Donald A. Scheer issued May 5, 2006, in full and entered an Order Granting Ford's Motion for Default Judgment against Defendants Allen Cross and FoMoCo Obsolete ("Defendants") on claims one, two, three, and four of Ford's Complaint. Based upon that Order, and being advised in the premises, IT IS HEREBY ORDERED AND ADJUDGED that Ford Motor Company ("Ford") does have and recovers the relief prayed for in its Complaint as follows:

A. Defendants, their employees, agents, successors, and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of this Order, are permanently enjoined from, without permission from Ford:

(1) imitating, copying, or making unauthorized use of the marks FORD®, FOMOCO®, or FOMOCO STYLIZED® (the "Ford Marks");

(2) using any simulation, reproduction, counterfeit, copy, or colorable imitation of the Ford Marks or trade dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any service or product;

(3) using any false designation of origin or false description including, without limitation, any letters or symbols constituting the Ford Marks or trade dress, or

performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed, or sold by Defendants is in any manner associated or connected with Ford or the Ford Marks, or is sold, manufactured, licensed, sponsored, approved, or authorized by Ford;

(4) transferring, consigning, selling, shipping, or otherwise moving any goods, packaging, or other materials in Defendants' possession, custody, or control bearing a design or mark substantially identical to any or all of the Ford Marks or trade dress;

(5) engaging in any other activity constituting unfair competition with Ford with respect to the Ford Marks or trade dress, or constituting an infringement of any or all of the Ford Marks, or of Ford's rights in, or to use or exploit, any or all of the Ford Marks or trade dress; and

(6) instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (5) above.

B. Under Ford's claims for cyberpiracy, Defendants, and all of their agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive notice directly or otherwise of this Order, are permanently enjoined from:

(1) transferring to anyone other than to Ford the domain name *fomoco.com*, and any other domain names that use names, words, designations, or other symbols confusingly similar to the Ford Marks; or

(2) registering, maintaining registrations for, using, offering for sale, claiming ownership of, or in any other way using the domain name *fomoco.com*, and any other domain names that use names,

words, designations, or other symbols confusingly similar to the Ford Marks.

C. Within 15 days of the entry of this Order of Default Judgment, Defendants shall disclose to the Court and to Ford all other domain name registrations directly or indirectly owned or registered by Defendants in order to permit the Court and Ford to consider whether any such other registration should be transferred to Ford or be subject to other relief in this matter.

D. Defendants shall immediately transfer to Ford the registration for the domain name *fomoco.com*, and any other domain names that use names, words, designations, or other symbols confusingly similar to the Ford Marks.

E. Defendants shall pay $10,000 (ten thousand dollars) to Ford as statutory damages under 15 U.S.C. § 1117(d) based on Defendants' cyberpiracy.

F. Defendants shall pay $100,000 (one hundred thousand dollars) to Ford as statutory damages under 15 U.S.C. § 1117(c) based on Defendants' counterfeiting and willful infringement of Ford's FOMOCO STYLIZED® trademark.

G. Defendants shall pay Ford for the attorney's fees and costs it has incurred in the prosecution of this case pursuant to 15 U.S.C. § 1117(a), in an amount of $28,288.89 (twenty eight thousand, two hundred, and eighty eight dollars and eighty nine cents).

SO ORDERED:

### REPORT AND RECOMMENDATION

SCHEER, United States Magistrate Judge.

### I. RECOMMENDATION:

I recommend that Plaintiff's Motion for Default Judgment be granted, and that the Court enter a Judgment for Plaintiff and

against Defendants for the injunctive relief and money damages prayed in the motion.

## II. *REPORT:*

### A. *Procedural History*

The Complaint in this action was filed on June 10, 2005. Plaintiff, Ford Motor Company, asserted federal claims for cyberpiracy, trademark dilution, trademark infringement, false designation of origin or sponsorship, and false advertising under §§ 43(c), 32(1) and 43(a) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1125(c), 1114(1) and 1125(a), and the amendment to the Lanham Act known as the Anti Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Plaintiff also asserted a claim of Trademark Infringement under the common law of the State of Michigan. The docket reflects that Defendants were served with Summons on September 1, 2005.

On November 23, 2005, the Court ordered Ford to show cause why its Complaint should not be dismissed for lack of prosecution. In a written submission on December 9, 2005, counsel for Plaintiff summarized the efforts expended to effect service upon Defendants, and advised the court that settlement efforts had been undertaken, without success, between Plaintiff and Robert Sayfie, an attorney representing Defendants. On December 30, 2005, the Court vacated its order to show cause and directed the Plaintiff to "proceed with its intended motion for a default judgment against defendants in the event defendants fail to file an Answer to plaintiff's Complaint and no settlement is reached by the parties prior to January 13, 2006." (Docket Entry No. 9). In an e-mail message on January 3, 2006, Plaintiff's attorney transmitted a copy of the vacation order to Mr. Sayfie, together with a demand for a response to Ford's settlement offer by January 6, 2006. (Declaration of Cody Zumwalt; Par. 7 and Exh. G). No response was received. (*Id.*; Par. 7). On January 23, 2006, Plaintiff filed a Request for Clerk's Entry of Default as to both Defendants. The docket reflects the Clerk's Entry of Default as to each Defendant on the same date.

On January 24, 2006, Plaintiff filed its Motion for Default Judgment. That motion was referred to the magistrate judge for Report and Recommendation on March 3, 2006. The motion was brought on for hearing on March 28, 2006. As of the date of this Report, neither Defendant has filed an Appearance in this action or otherwise responded to the Complaint.

### B. *Analysis*

Fed.R.Civ.P. 55(b)(2) governs the entry of a default judgment by the court. The subsection provides, in pertinent part, as follows:

[T]he party entitled to judgment by default shall apply to the court therefore; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom the judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct

such hearings or order such references as it deems necessary and proper . . . . Fed.R.Civ.P. 55(b)(2).

### 1. *Jurisdiction*

 In order to render a valid judgment, a court must have jurisdiction over the subject matter and the parties, and must act in a manner consistent with due process. *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105 (6th Cir.1995). A district court must determine whether it has jurisdiction over the defendant before entering a judgment by default against a party who has not appeared in the case. The failure to do so requires reversal. *Dennis Garberg and Assocs., Inc. v. Pack–Tech Int'l Corp.,* 115 F.3d 767 (10th Cir.1997).

 Four of the five substantive claims in the Complaint are based upon federal statutes. Plaintiff invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1331 ("federal question"), § 39 of the Lanham Act, 15 U.S.C. § 1121 (granting federal jurisdiction over all actions arising out of the Lanham Act), and 28 U.S.C. § 1338(a) (conferring federal court jurisdiction over all actions arising under federal trademark laws). When federal court jurisdiction is founded upon the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute, and if the exercise of personal jurisdiction does not deny the defendant due process. See *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176 (6th Cir.1992)). Michigan's long-arm statute provides that any of the following relationships between a party and the state will provide a sufficient basis upon which a court of record may exercise limited personal jurisdiction, and to render personal judgments against an individual based upon an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.075.

 The Michigan Supreme Court has determined that this state's long-arm statute confers the broadest possible grant of personal jurisdiction consistent with due process. *Sifers v. Horen,* 385 Mich. 195, 198–99, 188 N.W.2d 623 (1971). In order to comply with the due process clause, a plaintiff must establish that significant minimum contacts exist sufficient to satisfy "traditional notions of fair play and substantial justice." *The Sports Authority of Michigan, Inc. v. Justballs, Inc.,* 97 F.Supp. 2nd 806, 810 (E.D.Mich.2000). (Quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). In our circuit, three criteria must be met before a court will

exercise personal jurisdiction: (a) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (b) the cause of action must arise from the defendant's activities there; and (c) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* (Quoting *Kerry Steel Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 150 (6th Cir. 1997)). A showing of purposeful availment is essential. *Id.* at 811. (Citing *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1300 (6th Cir.1989)).

Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the Complaint, including jurisdictional averments. *Visioneering Construction v. U.S. Fidelity and Guaranty,* 661 F.2d 119, 124 (6th Cir.1981). Paragraph 3 of Plaintiff's Complaint contains two jurisdictional averments: first, the violation of a trademark holder's trademark rights occurs where the trademark holder resides, which is in this district; second, Defendants operate an interactive website that solicits and allows Michigan residents to purchase goods and services from defendants. Plaintiff relies upon a decision of this Court, in *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 341 F.Supp.2d 734 (E.D.Mich.2004), in which Judge Borman was confronted with facts very similar to those existing in this case. *D'Amato* was alleged to have infringed Audi's trademark and logo in the creation and operation of an interactive website through which he offered to sell various allegedly counterfeit goods. "For each good offered, a website visitor [could] view a product description, and click and 'add to cart' button to purchase the product. The visitor can then pay for the product via credit." 341 F.Supp. 2nd at 739. The defen-

dant claimed that he had never visited Michigan, and that he had no customers in Michigan. He argued that he had not transacted any business in Michigan. *Id.* at 740. Judge Borman ruled that the facts of the case established the existence of significant minimum contacts sufficient to support the exercise of personal jurisdiction. Relying on two earlier decisions of this Court, *Sports Authority Michigan, Inc. v. Justballs,* 97 F.Supp. 2nd 806 (E.D.Mich.2000) and *Audi AG v. Izumi,* 204 F.Supp. 2nd 1014 (E.D.Mich.2002), the judge ruled that defendant's website was sufficiently interactive to warrant a finding that it constituted "transacting business" within the meaning of Michigan's long-arm statute, despite the fact that plaintiff could point to no transaction actually consummated within the state. The ruling was based upon the finding that "the website allow[ed] customers to purchase items and, at a minimum, attempt[ed] to solicit business from Michigan residents." 341 F.Supp.2d at 744. The court further found that "because Michigan residents [could] purchase services and products on the website, it [was] sufficient for plaintiff to create a *prima facie* case for purposeful availment." *Id.*

Alternatively, Judge Borman found that the defendant's activities gave rise to "effects" in the State of Michigan. Relying upon an earlier decision of this Court in *Ford Motor Co. v. Great Domains, Inc.,* 141 F.Supp. 2nd 763 (E.D.Mich.2001), he determined that the plaintiff's injury would be felt in Michigan; that the use of plaintiff's trademarks was intentional or deliberate; and that the defendant's acts were expressly aimed at the State of Michigan. Those findings were based upon the facts that: (a) the plaintiff was headquartered in Michigan; (b) the incorporation of its trademarks by defendant was not likely to have resulted from negligence; and (c) the defendant deliberately infringed upon the

plaintiff's trademarks with knowledge that Audi resided in Michigan. 341 F.Supp. at 746–48.

In addition to finding purposeful availment, Judge Borman determined that D'Amato had engaged in "forum-related activities" by reason of direct and purposeful solicitation of sales through an infringing website to residents of Michigan, where plaintiff principally resided. 341 F.Supp.2d at 748. He found that, where purposeful availment and forum related activities are established, an inference arises that the exercise of personal jurisdiction is reasonable. 341 F.Supp. 2d at 748.

### 2. *Appearance/Notice Requirement*

■ "If the party against whom the judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application ...." Fed.R.Civ.P. 55(b)(2). The court record reflects that no appearance has been filed by, or on behalf of, the Defendants in this action. Plaintiff's counsel, however, has advised the Court that Defendants retained Robert Sayfie, an attorney, to represent them for purposes of settlement discussions. Those discussions, however, were not fruitful and, on January 3, 2006, Plaintiff's attorney notified Mr. Sayfie by e-mail that plaintiff would move for default judgment if the dispute was not settled by January 13, 2006. A copy of that communication is attached to Plaintiff's counsel's sworn declaration. (Declaration of Cody Zumwalt, pars. 6–7, Exhibit G).

There is authority for the proposition that a defendant need not respond directly to a complaint in order to have "appeared in the action" for purposes of Fed.R.Civ.P. 55(b)(2). Legal policy generally disfavors

judgments by default, and court's have gone to considerable lengths to impose the requirement that notice be given of an application for a default judgment. See Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:* Civil 3rd § 2686. The commentators compare two cases in which no formal response to a Complaint was filed with the court, despite direct communications between the parties in an effort to resolve their dispute. In *Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C.Cir.1970), the court held that the exchange of letters constituted an appearance for purposes of the rule on default judgments. In *Port–Wide Container Company v. Interstate Maintenance Corporation*, 440 F.2d 1195 (3rd Cir.1971), the court held that oral and written communications between counsel for the parties in an effort to settle a dispute did not constitute an appearance. In *Livermore*, no notice whatever was given to defendant regarding plaintiff's application for default judgment. In *Port–Wide*, plaintiff had delivered a letter to defendant containing notice that he would apply for default judgment if no answer was filed with the court within a specified time.

■ The facts of the case before this court are more consistent with those presented in *Port–Wide*. On January 3, 2006, Plaintiff's counsel notified Mr. Sayfie that a settlement offer first communicated on November 28, 2005 remained open. The e-mail communication further advised that, if Plaintiff did not receive a response to the offer by January 6, 2006, it would move for default judgment. (Declaration of Cody Zumwalt, Exhibit G). The sworn declaration of Plaintiff's counsel states that no response to the e-mail communication was received. (*Id.*, par. 7). Not every effort at informal settlement need be considered an "appearance" for purposes of Fed.R.Civ.P. 55(b)(2). See, *Heleasco Sev-*

*enteen, Inc. v. Drake,* 102 F.R.D. 909, 912 (D.Del.1984). But, even if Mr. Sayfie's communications constituted an "appearance," Plaintiff's e-mail communication of January 3, 2006 provided sufficient notice of Ford's intention to file its motion for default judgment if settlement was not achieved by the stated deadline. I am satisfied that Defendants are properly subject to default for failing to respond to the Complaint.

When a defendant is in default, the well pleaded factual allegations in the Complaint, except those relating to damages, are taken as true. *Thomson v. Wooster,* 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885); *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110–11 (6th Cir. 1995). Fed.R.Civ.P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect. See: Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 3rd § 2688. This Court should accept as true all factual allegations contained in the federal claims asserted in Ford's Complaint. If those allegations are sufficient to support a finding of liability as to each defendant on the claims of cyberpiracy, trademark dilution, trademark infringement and false designation of origin and false advertising, the Court should enter judgment.

The Complaint asserts facts which are common to all of the various claims. Those facts establish Ford Motor Company's federal trademark registrations for FORD® in 1909, FOMOCO® in 1948, and FOMOCO STYLIZED®. Plaintiff alleges that the trademark registrations are valid, and that it has expended substantial assets and effort in developing them as famous and distinctive symbols of their automotive products worldwide. The Complaint further asserts that Defendants have no authority to use the Ford marks, but have done so despite written objection by Ford. Specifically, Plaintiff alleges that Defendants registered the domain name *formoco.com* on September 9, 1998, and began using the domain name to operate and promote their business of selling restoration parts for Ford automobiles under the business name "FoMoCo Obsolete." Plaintiff alleges that Defendants created a logo displaying their business name of "FoMoCo Obsolete" that incorporates a precise counterfeit of Ford's own FOMOCO STYLIZED® trademark. (See Illustration, Complaint, Par. 1). The Complaint claims that Ford has delivered multiple written demands explaining its trademark rights and prevailing upon Defendants to cease their infringement of Ford's trademarks.

### 3. *First Claim for Relief (Cyberpiracy)*

A claim of cyberpiracy under the Anti Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A) is established upon a showing that defendants registered, trafficked in, or used in bad faith a domain name that incorporates a famous or distinctive trademark that was famous or distinctive at the time of registration. The facts alleged in the Complaint and the sworn Declaration of Cody Zumwalt, taken as true, satisfy each of the statutory requirements. Paragraphs 6, 7 and 10–12 of the Complaint assert that Defendants registered domain name *fomoco.com* without authority from Ford. Paragraphs 8–9, 18 and 19 assert that *fomoco.com* is identical to Ford's pre-existing, famous and distinctive FoMoCo® trademark and that FoMoCo® was famous and distinctive at the time of Defendants' registration and use of their domain name.

Paragraph 17 of the Complaint alleges that Defendants acted in bad faith.

15 U.S.C. § 1125(d)(1)(B) contains a non-exclusive list of factors which may be considered in determining whether a defendant has acted in bad faith.[1] "These factors, as a whole, focus on whether the defendants' use of the disputed domain name is legitimate-i.e., for some purpose other than simply to profit from the value of the trademark." *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F.Supp. 2nd 635, 642 (E.D.Mich.2001). Plaintiff argues that Paragraphs 1 and 8–14 of its Complaint, and Paragraphs 3–6, and 8 of the Declaration of Cody Zumwalt submitted in support of Ford's Response to Order to Show Cause (Docket Entry 8) provide a basis for a finding of bad faith under factors 1–5, 7 and 9. I am satisfied that those factual allegations, accepted as true by reason of Defendants' default, establish Defendants' lack of any legitimate right to the use of the disputed domain name, and confirm that their sole purpose was to profit from the value of Plaintiff's trade-mark. Accordingly, a finding of bad faith is warranted. I recommend that the Court grant a judgment for Plaintiff and against Defendants on the Cyberpiracy claim.

### 4. *Second Claim for Relief (Trademark Dilution)*

■■■■■ A plaintiff asserting a claim for trademark dilution must show "that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998); *Porsche Cars North America, Inc. v. Manny's Porshop, Inc.*, 972 F.Supp. 1128, 1132 (N.D.Ill.1997) (dilution "prohibits even innocuous use"). Paragraphs 8, 9 and 30 of Plaintiff's Complaint, taken as

---

1. The factors listed in 15 U.S.C. § 1125(d)(1)(B) are:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

true, are sufficient to warrant a finding that Ford's trademarks are famous. Paragraphs 6–11 allege that Defendants are making unauthorized commercial use of a mark which incorporates Plaintiff's famous and properly registered trademark. Paragraphs 8 and 11 assert that Defendants' use of Plaintiff's marks began after they had become famous. Paragraphs 10, 11, 14, 24 and 25 of the Complaint establish that Ford markets and sells its own line of automotive products and accessories, and that the automotive products sold by Defendants directly compete with Ford's business. Paragraphs 1 (with illustration), 8, 11, 14 and 25 assert that Defendants' mark is virtually identical to Plaintiff's, and that their use of a precise counterfeit dilutes the Plaintiff's trademark. Defendants have not contested Ford's factual assertions, and they must be accepted as true. When identical copies of famous marks are used on similar goods, dilution may be found without further evidentiary showing. See, e.g., *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418, 123 S.Ct. 1115, 1125, 155 L.Ed.2d 1 (2003) ("it may well be, however, that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical."); see also *Ford Motor Co. v. Lloyd Design Corp.*, 184 F.Supp. 2nd 665, 680 (E.D.Mich. 2002) ("the closer the junior user comes to the senior's area of commerce, the more likely it is that dilution will result from the use of a similar mark.") Plaintiff has alleged facts sufficient to satisfy all the requisite elements of a trademark dilution claim. Those factual assertions are uncontested. Accordingly, a judgment for Plaintiff on its claim of trademark dilution is warranted.

**5.** *Third Claim for Relief (Trademark Infringement)*

 15 U.S.C. § 1114(1)(a) provides, in pertinent part, as follows:

(1) any person who shall, without the consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

\* \* \* \* \* \*

shall be liable in a civil action by the registrant for the remedies here and after provided . . . .

15 U.S.C. § 1114(1)(a). "The essence of the wrong of trademark infringement is the passing off of the goods of one as those of another. Under the statute, liability is imposed upon those who use a mark likely to cause confusion with a registered mark. The test is whether the infringing mark taken as a whole so far resembles the trademark as to be likely to cause a casual or unwary purchaser to mistake it for the original." *Beer Nuts, Inc. v. King Nut Company*, 477 F.2d 326 (6th Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973) (citations omitted). The factual assertions in paragraphs 8 –12, 14, and 30–33 of the Complaint, if accepted as true, establish all of the elements necessary to a finding of liability under the statute.

Paragraphs 11, 14, and 31 of the Complaint, together with paragraph 4 and Exhibit F to the Declaration of Cody Zumwalt and the exhibits presented at the hearing,[2] assert that Defendants have ad-

---

**2.** Hearing Exhibit # 1 consisted of sample pages from Defendants' website. Hearing

Exhibit # 2 is a product purchased from De-

vertised and sold automobile parts and accessories bearing marks identical with, or substantially indistinguishable from, Ford's registered FoMoCo® and FoMoCo stylized® trademarks. Paragraphs 8, 9 and 30 of the Complaint, together with Paragraph 2 and Exhibits A and B of the Zumwalt Declaration assert that the Ford marks are famous and distinctive, and that they are associated by the consuming public exclusively with Ford. Such allegations, if accepted, will warrant a finding of a likelihood of confusion. Paragraphs 10 and 31 of the Complaint establish that Defendants had no authority from Ford to use their marks. In view of Defendants' default, plaintiff's factual allegations must be accepted as true. I am satisfied that they fully support a finding of trademark infringement as to each Defendant, and I recommend that the Court enter a judgment for Plaintiff on its Third Claim for Relief.

### 6. Fourth Claim for Relief (False Designation of Origin and False Advertising)

 Ford's claim for false designation of origin and false advertising is based upon § 43(a) of the Lanham Act. The statute provides that:

(1) any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which -

(A) is likely to cause confusion, or to cause mistake, or to deceive ... shall

be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1). Our circuit has applied the same "likelihood of confusion" test to an unfair competition claim as is employed in a claim of trademark infringement brought under 15 U.S.C. § 1114(1). In both instances, the test is "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 791–92 (6th Cir.2004). In the context of summary judgment, our circuit has applied an eight factor test first employed in the 9th Circuit. See, *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).[3] In the case at bar, Plaintiff has alleged that it is the rightful owner of a senior mark; that the Plaintiff's mark is famous and strongly identified by the public with its automotive products; that the Defendants have employed marks essentially identical to that of the Plaintiff; that both Plaintiff and Defendants employ their respective marks in the marketing and sale of automotive products (indeed the Defendants sell products specifically designed for use on vehicles manufactured by Plaintiff); and that Defendants intended to promote sales of their goods by creating confusion in the market between their goods and Plaintiff's. By reason of their failure to answer the Complaint, Defendants forfeit the right to contest those factual allegations. The eight analytical factors "imply no mathematical precision, but are simply a guide to help determine

---

fendants through their website, but not from Michigan.

**3.** The factors are:
1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;

4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the mark;
8. likelihood of expansion of the product lines.

whether confusion is likely." *AutoZone*, 373 F.3d at 793. "[N]ot all of [the] factors may be particularly helpful in a given case .... *The ultimate question remains whether relevant consumers are likely to believe that the products ... offered by the parties are affiliated in some way." Id.* I am satisfied that the facts asserted by Ford are sufficient to warrant a finding that Defendants' actions are likely to cause confusion as to the origin of the parties' goods. I recommend judgment in favor of Plaintiff on the fourth claim of the Complaint.

### 7. *Remedies*

 The Lanham Act permits a trademark owner to elect, at any time before final judgment, to recover an award of statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. 15 U.S.C. § 1117(c). A trademark owner may also elect to recover statutory damages for cyberpiracy. 15 U.S.C. § 1117(d). Plaintiff has exercised its rights to elect an award of statutory damages under both provisions. A court has wide discretion in determining the amount of statutory damages to be awarded, within the specified limits established by Congress. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir.1990). In addition to money damages, a court may grant a trademark owner permanent injunctive relief. 15 U.S.C. § 1116, 1125(c)(2). A court may also grant an award of costs and, in "exceptional" cases, attorney fees. 15 U.S.C. § 1117(a).

### A. *Statutory Damages for Trademark Infringement*

 Under the Lanham Act, a court may award a minimum of $500.00, and a maximum of $100,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just ...." 15 U.S.C. § 1117(c)(1). If the court finds that the use of the counterfeit mark was wilful, the maximum limit of statutory damages is raised to $1,000,000.00. 15 U.S.C. § 1117(c)(2). An infringement is wilful, and thus triggers the enhanced statutory damages limit, if the defendant "had knowledge that its actions constitute an infringement." *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2nd Cir.1992). Actual knowledge is not required, and constructive knowledge will suffice to trigger the enhancement. Thus, knowledge need not be proven directly, but may be inferred from the defendant's conduct. A defendant's continued infringement after notice of his wrongdoing is probative evidence of wilfulness. *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380–81 (7th Cir.1988) (wilfulness may be demonstrated where the infringer is provided notice of its infringing conduct). Paragraphs 10, 12–31, and 47 of the Complaint, together with Paragraph 3 and Exhibits C–E of the Zumwalt Declaration, assert that Defendants have persisted in their unlawful and infringing use of Ford's trademarks, despite their receipt of actual notice that their actions were unauthorized. Plaintiff has cited authority for the proposition that a successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent. *Peer Int'l*, 909 F.2d at 1336–37; *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 496–98 (4th Cir.1996). Ford has also cited cases which have recognized the deterrent effect of statutory damages as a proper objective. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2nd Cir.1986).

Defendants continued to maintain their infringing domain name registration and to operate their unauthorized and infringing website displaying counterfeits of Ford's

FoMoCo Stylized® designed trademark despite their receipt of actual notice that their actions were unauthorized by Ford. Such conduct warrants the imposition of enhanced statutory damages. Plaintiff seeks an award equal to the maximum amount of statutory damages permissible for *non-wilful* trademark infringement ($100,000.00). That request represents only 10% of the statutory damage authority vested in the court in connection with the wilful conduct established in this case. In view of Ford's long term and expansive use of the infringed marks, its substantial investment in their employment, and the need to deter Defendants and others from unlawful infringement of its trademark rights, I find that the amount prayed is reasonable. I recommend that Ford be awarded $100,000.00 in statutory damages on its trademark infringement claim.

## B. *Statutory Damages for Cyberpiracy*

15 U.S.C. § 1117(d) permits a successful plaintiff to recover, in lieu of actual damages and profits, an amount not less than $1,000.00 nor more than $1,000,000.00 per domain name, as the court considers just, as damages for cyberpiracy. In the same way as statutory damage provisions with regard to trademark infringement, such authority to award damages for cyberpiracy serves not only to afford restitution and reparation for injury, but also to discourage wrongful conduct. *E & J Gallow Winery v. Spiderwebs Limited*, 386 F.3d 270, 278 (5th Cir. 2002). Plaintiff cites authority for the award of statutory damages in the amount of $100,000.00 for each of five domain names in a case where a defendant registered domain names employing famous brands and names and used them to link to advertisements for unrelated products and services. In this case, Defendants employed Ford's famous marks to promote their business of selling similar and competing products. They continued to employ the marks after receiving actual notice of the infringing nature of their conduct, and their lack of authority for it. Plaintiff seeks a statutory damage award of $10,000.00, representing 10% of the maximum allowable award. I find that the circumstances of this case warrant the granting of that relief, and I recommend that the court enter a damage award of $10,000.00 to Plaintiff on its Cyberpiracy claim.

## C. *Injunctive Relief*

15 U.S.C. §§ 1116(a) and 1125(c)(2) provide for injunctive relief. Section 1116(a) applies in cases of trademark infringement and unfair competition, as there is no adequate remedy at law for the injury resulting from a defendant's continuing infringement. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988). Section 1125(c)(2) provides for injunctive relief in cases of dilution, including forfeiture, cancellation or transfer of a domain name to the owner of a mark, as prescribed in § 1125(d)(1)(C). As both infringement/unfair competition and dilution are appropriate findings in this case, Plaintiff should be granted the injunctive relief requested in its Complaint. Accordingly, I recommend that Defendants be enjoined from making any unauthorized use of Ford's trademarks. The Court should further order Defendant's to disclose to the Court and to Plaintiff all other domain name registrations held by them. The Court should direct Defendants to transfer registration of the domain name *fomoco.com* to Ford. A similar order should enter with regard to any other domain name registrations held by Defendants which incorporate Ford's trademarks.

## D. *Costs/Attorney Fees*

As a prevailing party, Plaintiff should be awarded its costs in this action.

Further, the Lanham Act authorizes an award of "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). Such an award is available in trademark infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate or wilful. *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1023 (9th Cir.2002). (Upholding award of attorney fees based on allegation that defendant acted "knowingly, maliciously, and oppressively, and with the intent to . . . injure" where such allegations were deemed admitted by virtue of defendant's default). Plaintiff also cites authority for the proposition that a showing of bad faith is not required, and that wilful or deliberate infringement will support an award of attorney fees. See *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1219 (9th Cir.2003). For all the reasons stated above, I conclude that Defendants' unlawful conduct was at least deliberate, and that an award of attorney fees in this case is appropriate.

Plaintiff has submitted a Declaration of Attorney Fees and Costs in connection with the prosecution of this action. Ford seeks a total award of costs and fees of $28,288.09. The Declaration sets out in detail the hours expended by its primary and local counsel (and their agents) in connection with defendants' unlawful conduct. Plaintiff also states the amounts and purposes of costs expended in vindicating its trademark rights. The Declaration is verified and signed by Cody Zumwalt, as counsel for plaintiff. Upon my review of the Declaration, I find that the time expended and the amounts requested are reasonable. I recommend that the Court include in its judgment an award of $28,288.09 representing Plaintiff's reasonable attorney fees and costs.

### 8. *Soldiers and Sailors Civil Relief Act*

▮ The Soldiers and Sailors Civil Relief Act of 1940, 50 App. U.S.C. § 501 *et. seq.* provides protection for members of the armed forces during their terms of service by providing temporary suspension of legal proceedings and transactions relating to their civil liabilities. Section 520 requires the plaintiff in any court proceeding to file an Affidavit, prior to the entry of a Default Judgment "setting forth facts showing that the defendant is not in the military service." Plaintiff in the case at bar has met that requirement. The facts set forth in Paragraph 5 of the Declaration of Cody Zumwalt demonstrate that Defendant Allen Cross is not in the military service. Defendant Fomoco Obsolete is not a natural person, and is not protected by the Act. Based on the sworn declarations of Ms. Zumwalt, no provisions of the Soldiers and Sailors Civil Relief Act of 1940 will preclude the entry of Default Judgment in this case.

### 9. *Conclusion*

For all of the above reasons, I recommend that the Court enter a judgment by default against Defendants on each of the claims set forth in Plaintiff's Complaint, and grant injunctive relief, monetary damages, attorney fees and costs under the terms and in the amounts stated herein.

### III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981), *Thomas v.*

*Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

***Note this especially, at the direction of Judge Cleland:*** any objections must be labeled as "Objection # 1," "Objection # 2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection # 1," "Response to Objection # 2," etc.

May 5, 2006.